**UNITED STATES of America, Plaintiff,**

v.

**Robert SOBLEN, also known as Robert Soble, Defendant.**

United States District Court
S. D. New York.
Aug. 7, 1961.

———◆———

Robert M. Morgenthau, U. S. Atty., New York City, for the Government. Richard Conway Casey, and David R. Hyde, Asst. U. S. Attys., New York City, of counsel.

Jacob W. Friedman, New York City, for defendant. Joseph Brill, New York City, of counsel.

HERLANDS, District Judge.

Considerations of public interest and public policy suggest, in view of what has been said here this morning, that the Court review certain aspects of the proceedings in this case before imposing sentence.

The indictment was voted by a grand jury consisting of twenty-three citizens after investigation and the presentation of evidence.

In accordance with our American system of justice, the accusation of the defendant was not made by political functionaries or Government officials.

The names and addresses of the prosecution's witnesses were furnished to the defendant before trial, in accordance with the applicable statute.

The names and addresses of all persons on the jury panel were furnished to the defendant before trial, in accordance with the applicable statute.

Extensive medical hearings were held publicly before trial in order to determine the physical and mental fitness of the defendant to stand trial and to participate in the trial together with his counsel. The matter of the defendant's health was carefully considered at all stages of the proceedings.

A fair and impartial jury was selected with the appropriate participation of counsel.

Copies of pretrial statements of prosecution trial witnesses were furnished to the defendant, in accordance with the applicable statute.

A transcript of the grand jury testimony of Jack Soble was furnished to the defendant, in accordance with applicable legal principles.

A contour chair for the defendant's use during the trial was furnished to him in accordance with his request.

Appropriate recesses were granted to the defendant and his counsel both upon request and upon the Court's own initiative.

The defendant's constitutional and civil rights and privileges were safeguarded at all stages of the proceedings, including the charge to the jury.

The defendant's own counsel said (at pages 1634–1635 of the trial record):

"Mr. Brill: May I at this time state for the record that your Honor has been very zealous in protecting the rights of this defendant; that your Honor has been extremely fair, kind and courteous; that your charge was very fair.

"I say this to your Honor because I want your Honor to know precisely how the attorneys for the defendant feel about it, and how the defendant feels about it."

It is apparent from this review that the conduct of this case from start to finish offers a striking contrast between the enlightened methods of American justice and the methods employed in certain foreign countries. That contrast carries its own message far beyond the walls of this courtroom.

With respect to the sentence to be imposed, the following nine circumstances have shaped the Court's judgment:

1. Despite the fact that the defendant was accused of conspiring against this country, he was given the full measure of American justice.

2. The defendant's trial was conducted in an atmosphere free from passion or hysteria. The defendant's every constitutional and civil right was scrupulously protected.

3. The conspiracies in which the defendant participated were farflung in

their nature. They operated here and abroad. They involved at least eighteen co-conspirators. They continued over many years. They were conceived by the Secret Police of Soviet Russia. They were characterized by stealth and cunning. Cryptonyms, couriers and the diplomatic cloak were part of the spy apparatus used. The conspiracies were executed through the active connivance and financial support of at least two high-ranking Soviet diplomats and their wives stationed in this country, Vassili Zubilin and Mikhail Chaliapin. These characteristics of the conspiracies made it difficult to expose and prove the full range of the conspiracies and the identities of all the conspirators.

4. The plan and the acts of the defendant and his co-conspirators were not an integral part of reconnaissance or intelligence operations carried on by members of any foreign power's air, military or naval representatives. On the contrary, the defendant and his family were permitted to enter the United States as civilian immigrants. This country opened its doors; gave the defendant the opportunity to earn a living, to move about without surveillance, and to enjoy the blessings of liberty and freedom.

In return, the defendant betrayed his benefactor.

5. The defendant's biography reveals him as a highly educated and intellectual individual, without a shred of loyalty in his makeup. He has not been faithful in any of his relationships. He has been disloyal to Lithuania, the country of his birth. He has been disloyal to his Trotskyite associates. He has been disloyal to the religious and ethical teachings of his forefathers.

6. The matter of the defendant's health has received the Court's close consideration before, during and after the trial. A spy is a spy no matter what his health may be.

7. The Court does not find any bona fide or substantial extenuating or mitigating circumstances in the defendant's favor.

8. The severity of the defendant's sentence must be consonant with the obvious character of the defendant's crime. A conspiracy to obtain and transmit American national defense secrets may imperil the lives of all Americans. Such a crime is, therefore, analogous to a conspiracy to commit mass murder.

9. To the extent that punishment of this defendant may have a deterrent effect on others contemplating espionage, the Court must mete out punishment that may serve to prevent similar crimes. The Court has a grave responsibility to protect the safety of our nation and its citizens.

Stern punishment is imperative.

The defendant is hereby sentenced on Count 1 to a term of ten years; and on Count 2 to a term of the defendant's natural life. The Court respectfully recommends to the Attorney General that the defendant serve said terms in the penitentiary at Springfield, Missouri, where there are medical and hospital facilities appropriate to the defendant's condition.[1]

---

1. Motion to reduce bail pending appeal denied August 11, 1961.